**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**AMY L. POWELL,**

      **Plaintiff,**

v.                                                   **Case No. 8:08-cv-135-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded for an award of Supplemental Security Income payments.

I.

Plaintiff was fifty-eight (58) years of age at the time of her administrative hearing in March 2007. She stands 5' 8" tall and weighed 192 pounds. Plaintiff has a tenth grade education and a GED. She also has some vocational training in secretarial and word processing work. Her past relevant work was as a bookkeeper, office manager, clerk, and file clerk. Plaintiff applied for disability benefits and Supplemental Security Income payments in April 2004 (protected filing date), alleging disability as of April 15, 2001, by reason of

migraine headaches, back pain, anxiety, and depression. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that she became disabled around April 2001. She cannot remember where she was working at the time but her problems were causing her to miss too much work. Plaintiff suffers migraine headaches, anxiety/depression, and back pain. By her account, her most serious impairment is her back pain, which she has had since 1995. She has received a variety of treatments including cortisone shots, use of a TENS unit, and chiropractic care, and she currently sees a doctor every other month. She was involved in a motor vehicle accident in 2001, which aggravated her back. She is prescribed Lorcet and Roxicodone for pain, and Soma as a muscle relaxer. She described her lower back pain as a constant burning sensation. The pain is worse in the morning and she described it as a level 4 or 5 on a scale of 1 to 10, with 10 being the highest level of pain, when she is on medication. She does not go without her pain medication. Plaintiff testified that it is very easy for her to strain her back and any lifting, bending, or reaching is very difficult. She claims to suffer neck pain as well since the motor vehicle accident. Her doctor would like her to see a specialist, including a psychiatrist, but she does not have the financial means for such examination or treatment.

Plaintiff testified that she also suffers from "very intense" migraine headaches three to four times a month. They make her feel nauseous to the point where she has to lie down in a dark, cool room. The headaches last for two days and are debilitating. She testified that she

is unable to afford Imitrex to treat her migraine headaches so she takes over-the-counter medication. Plaintiff also suffers from tension headaches and sinus headaches.

Plaintiff also claims to suffer from depression and anxiety. She has taken Paxil, Elavil, and Restoril for depression and to help her sleep, and Xanax for her anxiety. Elavil did help her sleep. She indicated that these conditions have caused her to become isolated from friends because she does not want to leave the house. Doing so makes her fearful and her depression causes her to cry a lot. At times, she gets so nervous that she suffers from panic attacks and shortness of breath. Because she is unable to stop her thoughts at night, she has a hard time falling asleep. All of her conditions cause her difficulty sleeping. While she may be in bed eight or nine hours, she wakes two to three times each night due to back pain. Plaintiff has to take a nap in the early afternoon, up to four times a week, due to fatigue or sluggishness.

Plaintiff described her daily regimen as waking, fixing coffee, reading the newspaper, watching television, and emailing people. Additionally, she does chores such as dusting, dishwashing, and laundry, although she must do these at her own pace with frequent breaks for her back. She also cooks simple meals. Her boyfriend does the heavier cleaning and the yard work. Plaintiff is able to drive but she only leaves the house a couple of time a week and she does not drive more often because of her anxiety.

Plaintiff estimated that she can stand and walk for one to one and a half hours but then has to sit down and relax her back for twenty to twenty-five minutes. She can sit for about the same length of time but must then stand up and move about and stretch. She testified that she cannot bend, stoop, kneel, crouch, climb, or crawl without experiencing pain.

3

Plaintiff stated that lifting a large bag of cat food, twelve to fifteen pounds, is possible though she could not carry such weight from her car into her house. Finally, she indicated that her condition has left her without any social life and she no longer does any of the activities she formerly enjoyed. On questioning about her alcohol use, she testified that she quit drinking in December 2005. Plaintiff continues to smoke a one half to three-quarters of a pack of cigarettes a day. (R. 319-341).

The ALJ next took testimony from Joyce Courtright, a vocational expert ("VE"). Ms. Courtright testified on an assumption of a person Plaintiff's age, education, vocational background and transferrable skills, capable of performing light exertional work that did not require more than occasional postural activities or exposure to extreme temperatures and required no more than moderate exposure to humidity and vibrating tools/equipment and avoidance of moderate exposure to hazardous machinery or working at unprotected heights. On this hypothetical, the VE testified such individual could perform Plaintiff's past work. If an additional limitation was imposed for the need of a sit/stand option at will, the VE testified that such individual would not be able to perform any of Plaintiff's past relevant work. However, such individual could perform work as a receptionist, cashier II, and small products assembl[er], as well as wrapping and packing jobs such as packing/meat sealing.

On a hypothetical that assumed such individual could lift ten pounds occasionally and frequently, stand or walk for less than two hours in an eight-hour day, with the limitation of a sit/stand option as needed to permit up to six hours in an eight-hour work day, with unlimited pushing or pulling, but with no climbing, stooping, kneeling, crouching, or crawling, and only occasional balancing, with the same environmental limitations addressed

4

previously, the VE testified there were no jobs available with such limitations. However, if the individual could stoop on an occasional basis, then some sedentary manual work would be available including work in final assembly, production inspection work, and work as an order clerk. Finally, if it was assumed that the individual's ability to perform tasks in a timely manner would be interrupted due to pain and that there would be interruptions in attention, concentration, and pace because of headaches, no jobs would be available. Upon further questioning by Plaintiff's counsel, which assumed that such individual would miss a minimum of six days per month due to severe headaches, the VE testified that all work would be precluded with that number of absences. Further, if such individual needed to nap at least three work days per week for approximately an hour in the early afternoon, there would be no work available. (R. 341-349).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Significant to the evaluation was Plaintiff's date last insured for disability benefits, June 30, 2002.

By his decision of March 30, 2007, the ALJ determined that while Plaintiff has severe impairments related to chronic low back pain, migraine headaches, fatigue, insomnia, anxiety, and depression, she nonetheless had the residual functional capacity to perform a reduced range of sedentary exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-23).

The Appeals Council considered additional arguments and denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises four claims on this appeal. As stated by the Plaintiff, the ALJ committed legal error by:

(1) failing to give substantial weight to the opinion of the treating physician;

(2) finding that the statements of the claimant were not entirely credible;

(3) failing to consider all the evidence of record; and

7

(4) failing to consider how the inability to ever stoop, kneel, crouch, or crawl would erode the sedentary job base.

At the outset, I find no competent evidence that Plaintiff was disabled on or before her date last insured of June 30, 2002. Indeed, records from this time period give no support to such claim.

By her first claim, Plaintiff argues that the ALJ erred in failing to credit the evidence from Dr. Malcolm C. Foster, a long-term treating physician.[1] In particular, she complains that the ALJ failed to properly evaluate and give appropriate weight to the residual functional capacity ("RFC") assessment of this treating doctor and instead afforded too much weight to the opinions of (unspecified) state agency doctors who did not examine her. In her related fourth claim of error, Plaintiff argues broadly that the ALJ erred by failing to address Dr. Foster's opinion that she could not stoop, kneel, crouch, or crawl and, as a consequence, the hypothetical questions the ALJ posed to the VE were incomplete. In support, Plaintiff cites Social Security Ruling ("SSR") 96-9p, which dictates that an ability to stoop at least occasionally is required for most unskilled sedentary occupations and a total inability to stoop would substantially erode the unskilled sedentary occupation base such that a finding of disabled would be required. Plaintiff also suggests that the ALJ's failure to account for these limitations resulted in an incomplete and unreliable hypothetical question.

---

[1] Dr. Foster began treating Plaintiff for complaints of low back pain, depression and anxiety in November 2002. Records reflect Plaintiff was treated conservatively with medication. In November 2005, Dr. Foster completed an RFC assessment in which he found Plaintiff capable of lifting ten pounds occasionally and frequently; standing and walking for less than two hours in an eight-hour day; unlimited sitting with a sit/stand option; and unlimited pushing and/or pulling but no climbing, stooping, kneeling, crouching, or crawling and only occasional balancing, along with certain environmental limitations. (R. 286-93).

8

In response, the Commissioner urges that the decision clearly reflects the ALJ's full and fair assessment of Dr. Foster's records and the fact that the ALJ gave great weight to that evidence, discounting it only in relation to the doctor's finding on Plaintiff's ability to stoop. Further, the hearing reflects that the doctor's precise RFC assessment was employed with the VE. Since the medical evidence supports the finding by the ALJ that Plaintiff could occasionally stoop, the Commissioner urges the court to affirm the decision.

Under the applicable standard, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[2] *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *See id.*

---

[2]Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440.

Also, case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Initially, I find that Plaintiff's complaints about the ALJ's use of Dr. Foster's RFC assessment before the VE are unfounded. As the transcript from the hearing indicates, the ALJ fully and accurately incorporated the doctor's RFC assessment in his questioning of the VE. (R. 347). By the VE's testimony, if Plaintiff was as limited as Dr. Foster opined, then no work would be available. On the other hand, if Plaintiff was slightly less limited, i.e., she could stoop on occasion, then even with the balance of Dr. Foster's limitations there was work available to her. (R. 347-48). However, the ALJ's handling of the doctor's RFC assessment is more problematic.

As the decision reflects, the ALJ's recitation of Dr. Foster's RFC assessment is inaccurate. Contrary to the ALJ's recitation, the doctor did not find Plaintiff capable of occasionally kneeling, crouching and crawling, and he made no mention at all of the doctor's limitation for no stooping. *Compare* (R.19) *with* (R. 288). More significantly, the decision reflects a misuse of the doctor's assessment. Thus, in discounting Plaintiff's subjective complaints, the ALJ noted that Dr. Foster indicated in his RFC assessment that Plaintiff could do sedentary work with some limitations. However, as testified to by the VE, this doctor's

10

assessment would render Plaintiff disabled from all competitive employment. The ALJ's statement that he gave this doctor's opinion evidence "greater weight" does not withstand close scrutiny either. In actuality, the ALJ chose to credit only those portions of the doctor's assessment that permitted a conclusion that Plaintiff was not disabled and he failed to address those aspects that he discounted.[3] Thus, in his decision, the ALJ found, *inter alia*, that Plaintiff (1) retained the functional capacity to lift/carry ten pounds and stand/walk for less than two hours in an eight-hour workday, (2) required a sit/stand, (3) could not climb, crawl or kneel, and (4) could occasionally stoop and balance. (R. 17). This finding with respect to Plaintiff's ability to stoop was contrary to the assessment by Dr. Foster and critical to the disability conclusion as noted by the VE. Under the applicable standard, an ALJ must provide good cause for declining to give substantial weight to such opinion evidence from a treating doctor.[4] Here, the ALJ simply ignored the evidence and failed to explain why it was not accepted. In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *See MacGregor*, 786 F.2d at 1053. When this is done, a finding of disability results in light of the VE's testimony in response to the third hypothetical question. Accordingly, this

---

[3]To this end, it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

[4]The Commissioner makes a cogent argument on this appeal that the ALJ might have employed in determining that Plaintiff could occasionally stoop had he chosen to explain his conclusion. However, the argument cannot salvage the ALJ's conclusion rendered contrary to the applicable standard. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

11

case is remanded for an award of benefits on Plaintiff's application for Supplemental Security Income payments.

In light of this conclusion, Plaintiff's remaining arguments need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for an award of Supplemental Security Income payments. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case. The matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 24th day of February 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record